1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROSA MARIA CABRERA THOMPSON,<br><br>Plaintiff,<br><br>v.<br><br>MUKILTEO SCHOOL DISTRICT NO. 6,<br><br>Defendant. | CASE NO. 2:25-cv-00529-JNW<br><br>ORDER |

## 1. INTRODUCTION

Just as the accumulation of sediment can reduce a healthy river to a trickle of mud, so too can the buildup of procedurally defective motions restrict the forward flow of civil litigation. At an early procedural stage, this case has become mired in a morass of meritless motions—for protective orders, for sanctions, for attorneys' fees and costs, for judicial notice of evidence, for in camera review of evidence, to strike, to dismiss, and so on—nearly all of which are ill-timed, duplicative, and unhelpful.

It thus falls to the Court to dredge the docket. This Order is intended to resolve all pending motions so that pro se Plaintiff Rosa Maria Cabrera Thompson's

claims against Defendant Mukilteo School District No. 6 can proceed on their merits. If, at any point downstream, inappropriate filings—in particular, frivolous discovery motions—again require such a dredging endeavor, the Court will likely accompany it with sanctions.

## 2.  BACKGROUND

### 2.1  Thompson's allegations.

The operative complaint,[1] Dkt. No. 46, alleges as follows:

Pro se Plaintiff Rosa Maria Cabrera Thompson, who identifies as African American and Latina, is a professional educator, public-school administrator, and licensed principal and superintendent. Dkt. No. 46 ¶¶ 7, 14. From August 2020 to October 2023, she was employed by Defendant Mukilteo School District No. 6 ("the District") as Assistant Principal at Kamiak High School, receiving only positive performance reviews. *Id.* ¶¶ 9–10. During this time, she was never subject to disciplinary action or advised of performance concerns. *Id.* ¶ 13.

In April 2023, Thompson filed a charge of discrimination and retaliation against the District with the U.S. Equal Employment Opportunity Commission (EEOC), alleging a racially discriminatory hostile work environment. *Id.* ¶ 17. In October 2023, she and the District resolved the EEOC charge in mediation, entering a binding settlement agreement—and, later, a separation-of-employment and release-of-claims agreement—in which the District promised to provide only neutral

---

[1] Thompson recently moved to amend her complaint. Dkt. No. 88. That motion remains pending.

1
2

references to Thompson's prospective employers, limited to her dates of employment and final salary. *Id.* ¶ 20.

3
4
5
6
7
8

Relying on these neutral-reference agreements, Thompson began applying for positions throughout Washington. *Id.* ¶ 22. From October 2023 to April 2025, she submitted over 140 job applications to about 35 school districts for teaching and administrative roles. *Id.* ¶ 23. None succeeded. In over ten instances, she advanced to finalist interviews. *Id.* ¶ 24. Yet each time, she was passed over in favor of a less-qualified applicant. *Id.*

9
10
11
12
13
14
15
16
17
18
19
20
21

According to Thompson, each of these late-stage rejections occurred only after the prospective employers conducted reference checks with District staff, who—"in direct violation of the October 2023 Settlement and Separation Agreements" and "in a pattern of coordinated sabotage"—provided negative and misleading statements about her. *Id.* ¶¶ 24, 27; *see id.* ¶¶ 30–34, 36–38, 41–45, 47–51. Thompson alleges that she was even extended an offer, with a confirmed start date, for an assistant principal role at Garfield High School in the Seattle Public Schools system—only to have the offer revoked after Seattle Public Schools conducted a reference check with District staff. *Id.* ¶ 29. As evidence, she provides an email in which the principal of Garfield High School, after offering her the position, states that "[a]fter reaching out for a reference check with your previous district. . . [w]e have decided not to move forward with your application for this role." Dkt. No. 46-15 at 1.[2]

22
23

---

[2] "A court may consider documents attached to the complaint without converting a motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citation modified).

1
2
3
4
5

After nine months of rejected applications throughout Washington State—rejections that Thompson causally attributes to the District's adverse references—Thompson "was forced to accept employment as a high school principal in San Francisco, California, . . . leaving behind her spouse and family" in Washington for the job. *Id.* ¶¶ 52–53.

6
7
8
9
10
11
12
13
14
15

Thompson brings nine claims against the District stemming from these adverse references: breach of contract (Count One); retaliation under Title VII of the Civil Rights Act of 1964 (Count Two); discrimination under color of law in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution (Count Three), tortious interference with a business expectancy (Count Four), defamation (Count Five), negligence (Count Six), intentional infliction of emotional distress (IIED) (Count Seven), discrimination and retaliation in violation of the Washington Law Against Discrimination (WLAD) (RCW 49.60.030) (Count Eight), and violation of the Washington Public Records Act (PRA) (RCW 42.56) (Count Nine). *See id.* at 15–20.

16

## 2.2  Procedural history.

17
18
19
20
21
22

Thompson initiated this action in March 2025. Dkt. No. 1. A few days later, she moved for a temporary restraining order and preliminary injunction prohibiting the District from providing negative references to prospective employers, engaging in retaliatory or defamatory conduct, or otherwise violating the terms of the parties' agreements. Dkt. No. 6. She argued that immediate relief was necessary because a key witness, the District's Director of Human Resources, who had allegedly given

23

adverse references about her, was expected to relocate. *Id.* at 7, 9. The Court denied the request for several reasons, including that (1) Thompson failed to satisfy the procedural requirements of Rule 65(b) and Local Civil Rule 65(b)(1), and (2) the potential witness's relocation did not represent the kind of harm that demands emergency equitable relief. Dkt. No. 10.

On April 4, Thompson filed a motion alleging that the District, on April 3, emailed several distribution lists instructing recipients to collect and submit documents related to Thompson for this lawsuit. Dkt. No. 33. Characterizing this litigation-hold email as unlawful retaliation, she requested a "protective order" that would, among other things, "prohibit[] the [District] from conducting any internal investigation, evidence collection, or document request concerning Plaintiff outside the formal discovery request" and compel the District "to cease and desist from contacting current or former employees for documents outside of legal counsel and discovery channels." *Id.* at 8. Two days later, she moved to sanction the District for the litigation-hold email, characterizing it as a discovery violation. Dkt. No. 35.

On April 10, the District's attorney filed a notice of appearance. Dkt. No. 36. Since then, the District has responded to Thompson's many motions, indicating an intent to defend this lawsuit. *See generally* Dkt.

On April 20, Thompson filed her Amended Complaint. Dkt. No. 46. The amended complaint did not alter the parties or claims.

On May 5, once Thompson's early-April motions were ripe for consideration, the Court issued an order denying them. Dkt. No. 56. The Order explained that motions for "protective orders" are inappropriate when discovery has not yet begun;

1    and in any case, such motions will never be granted absent a certification that the

2    movant has met and conferred in good faith with opposing counsel to resolve the

3    dispute without judicial intervention. *Id.* (citing Fed. R. Civ. P. 26(c); LCR 26(c)).

4    Given Thompson's pro se status, the Court denied the District's request for fees and

5    costs associated with responding to Thompson's motions. *Id.*

6        Before the Court could issue this May 5 Order, Thompson had already begun

7    filing additional requests for relief. On April 21, she filed a Motion for Judicial

8    Notice of Administrative Law Judge Ruling, asking the Court to take notice of a

9    May 2024 state administrative court ruling finding that Thompson had good cause

10   to quit her job for the District due to unlawful workplace hostilities. Dkt. No. 49. On

11   April 24, she filed a motion for a "protective order" and sanctions, alleging that the

12   District had attempted an impermissible end-run around the civil discovery process

13   by issuing public-record requests to third-party school districts seeking information

14   related to her job applications. *Id.* On May 7, she moved for default, arguing that

15   the District had missed the May 6 deadline to file a pleading in response to the

16   amended complaint. Dkt. No. 58.

17       On May 15, the District filed a Motion to Dismiss Partially, seeking dismissal

18   of six of nine of Thompson's claims under Fed. R. Civ. P 12(b)(6). Dkt. No. 65.

19       On May 18, Thompson filed a Motion for Judicial Notice of Related Case and

20   Limited Coordination, asking the Court to take notice of her lawsuit against Seattle

21   Public Schools stemming from their revocation of her employment offer, and seeking

22   coordination of the two proceedings. Dkt. No. 69. In its response to this motion, the

23   District generally opposed coordination, though expressed non-opposition to "limited

1    coordination with respect to joint depositions with [Seattle Public Schools] counsel

2    of shared witnesses" and "judicial notice of the filings themselves in the SPS case

3    (aside from the contested facts listed within the filings)." Dkt. No. 72.

4    On May 19, Thompson filed a Motion to Strike Defendants' Partial Motion to

5    Dismiss, arguing that the Court should strike the District's motion to dismiss, Dkt.

6    No. 65, from the docket because it was filed late. Dkt. No. 70.

7    On June 2, Thompson filed a motion for a "protective order," arguing that the

8    District failed to produce relevant voicemails in discovery. Dkt. No. 74. This motion

9    also sought "sanctions for spoliation" and to "stay" the "joint discovery coordination"

10   that she had requested in her earlier motion at Dkt. No. 69.

11   On June 14, Thompson filed another motion for a "protective order" seeking

12   immediate Court intervention to preserve evidence, including an order compelling

13   the District to "preserve all voicemails and related metadata held or accessed by"

14   certain named District staff. Dkt. No. 79.

15   On June 15, Thompson filed another motion for a "protective order" seeking

16   largely the same relief as her previous motions. Dkt. No. 80.

17   That concludes the Court's review of the parties' filings to date. And yet, this

18   review is not even comprehensive. The parties have filed numerous motions to

19   strike, motions for attorneys' fees and costs, motions for sanctions, requests for

20   judicial notice, and requests for in camera review. *See, e.g.*, Dkt. Nos. 63, 67, 73, 78.

21   Because the Court will address these motions in groups, rather than individually,

22   the Court need not burden this already-length background section with the largely

23   redundant specifics of those requests for relief.

ORDER - 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

## 3.  DISCUSSION

### 3.1  Threshold and procedural matters.

The Court first addresses several threshold and procedural motions that would either end or significantly alter the case's trajectory before reaching the merits and other pending matters.

#### 3.1.1    Motion for default.

Thompson moves for an entry of default against the District for its failure to timely file a pleading in response to Thompson's amended complaint. Dkt. No. 58. She states that because her amended complaint was filed on April 20, the District's responsive pleading was due by May 5. *Id.* (citing Fed. R. Civ. P. 15(a)(3)).

But as the District points out, Local Civil Rule 55(a) governs entry of default. *See* Dkt. No. 60. Under LCR 55(a), "in the case of a defaulting party who has entered an appearance, the moving party must give the defaulting party written notice of the requesting party's intention to move for the entry of default at least fourteen days prior to filing its motion and must provide evidence that such notice has been given in the motion for entry of default." District's counsel entered an appearance on April 10. Dkt. No. 36. Thompson was therefore required, in her motion for default, to provide evidence that she gave the District written notice of her intent to move for default at least fourteen days beforehand. She offers no such evidence. On this basis, her motion is procedurally defective.

Further, given that the District has actively responded to Thompson's many motions, the Court finds that the interest of justice, which favors the resolution of cases on their merits, would not be served by entry of default.

Thompson's motion for default is DENIED. Dkt. No. 58.

### 3.1.2    Motions to strike.

Thompson moves to strike the District's motion to dismiss as "procedurally defective, legally frivolous, and intended to circumvent ... default proceedings." Dkt. No. 70 at 1. The District moves to strike parts of Thompson's response to its motion to dismiss, Dkt. No. 61, for misstatements of case law and adjudicative facts. Dkt. No. 63. Elsewhere throughout the docket, both parties repeatedly ask the Court to strike various arguments made by their opposition. *See, e.g.*, Dkt. Nos. 51, 78.

Whether to strike matter from the docket is subject to judicial discretion. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). The Court may strike matter because it is redundant, immaterial, impertinent, scandalous, or for other good cause. *See* Fed. R. Civ. P. 12(f). Here, the Court finds no reason to do so. The Court can readily determine the accuracy of the parties' factual and legal assertions without striking incorrect or misleading assertions from the docket and thus scrubbing the record. The Court prefers a complete record of the parties' filings to a docket preened for accuracy.

The parties' motions to strike are all DENIED. Dkt. Nos. 51, 63, 70, 78.

### 3.1.3    Motion for coordination.

Arguing that this lawsuit involves "overlapping factual and procedural matters" with her pending lawsuit against Seattle Public Schools (Case No. 2:25-cv-00468-TL (W.D. Wash.)), Thompson filed a motion asking the Court to "order limited coordination" of her two federal cases, including "coordinated discovery (e.g.,

joint depositions of shared witnesses)," "consistent treatment of common legal issues," and "permission for cross-citation of evidence between dockets." Dkt. No. 69. The District partially opposed this request, yet expressed non-opposition to "limited coordination through joint depositions with [Seattle Public Schools] counsel of shared witnesses." Dkt. No. 72. After receiving the District's response, Thompson appears to have changed her position, moving to "stay joint discovery coordination" entirely and to prohibit "improper coordination between Seattle Public Schools and Mukilteo School District." Dkt. No. 74.

Upon review, the Court finds no reason to order coordination of Thompson's cases. The lawsuits involve different claims, different parties, different facts, and different law. Thompson's request for limited coordination—to the extent she did not rescind that request through her motion at Dkt. No. 74—is DENIED.

## 3.2    Thompson's motions requesting that the Court take judicial notice and conduct *in camera* review are denied.

Thompson has filed multiple motions asking the Court to take notice of other proceedings in which she is, or was, a party—including a state-level proceeding before an administrative law judge and her ongoing federal lawsuit against Seattle Public Schools. Dkt. Nos. 49, 69.

As Thompson points out, the Rules of Evidence allow the Court to take notice of certain facts. Fed. R. Evid. 201. But Thompson seems to misunderstand the purpose and import of Rule 201. Put simply, the Court will not take judicial notice apropos of nothing. Currently, there is no motion before the Court, such as a motion for summary judgment, that requires the Court to evaluate evidence and make

1    factual findings. The Court finds no occasion at this early stage in litigation to

2    invoke Rule 201 and take notice of Thompson's other proceedings. These requests

3    are DENIED.

4         Likewise, Thompson's motion for in camera review is denied for the same

5    reason. *See* Dkt. No. 79. Thompson asks the Court to review a "November 29, 2023

6    voicemail left by Seattle Public Schools attorney Shannon Ragonesi for Mukilteo

7    School District Executive Director of Human Resources Simone Neal," as well as a

8    "December 1, 2023, voicemails left by Dr. Tarance Hart, SPS principal and hiring

9    manager, for both Simone Neal and Stephen Shurtleff." *Id.* at 1–2. Thompson seems

10   to suggest the Court should review these voicemails because (1) they prove the

11   District's ultimate liability, and (2) they are being unlawfully withheld in violation

12   of discovery obligations. Neither argument has merit. This litigation is not at a

13   procedural stage in which evidence must be interpreted and weighed to assess

14   liability. Discovery is not even underway. This request is DENIED.

15   **3.3    Thompson's pending discovery motions are denied and borderline
16          frivolous.**

17        As detailed above, Thompson has filed numerous motions for "protective

18   orders" seeking Court intervention to prohibit the District, its staff, and its counsel

19   from engaging in various actions and litigation tactics. *See* Dkt. Nos. 51, 74, 79, 80.

20   None of these motions have merit. As explained in the Court's previous Order, Dkt.

21   No. 56, the purpose of a "protective order" under Rule 26(c) is to provide relief from

22   discovery obligations for persons from whom discovery is sought. Here, no discovery

23   has been sought. The deadline for the parties' initial disclosures has not arrived,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

and the parties have exchanged no formal discovery requests. And as explained in the previous order, the Court will never issue a protective order absent a certification by the moving party that they have met and conferred in good faith with opposing counsel to try to resolve the dispute without Court intervention. *See* Dkt. No. 56 at 2; LCR 26(c). Thompson's motions contain no such certification.

These borderline-frivolous requests are DENIED. The Court ORDERS Thompson to cease filing procedurally inappropriate discovery motions. If Thompson has questions or concerns about the discovery process, she is welcome to voice them at the parties' upcoming status conference with the Court. *See* Dkt.

### 3.4 The District's motion to dismiss is granted in part, denied in part, because Thompson has adequately pled all claims except her defamation and outrage claims.

The District moves to dismiss Counts 2, 3, 5, 6, 7, and 8 of the amended complaint, arguing that these claims fail to pass muster under Fed. R. Civ. P. 12(b)(6). Dkt. No. 65. Thompson presents her arguments against dismissal not in a responsive memorandum, but rather in a motion to strike. *See* Dkt. No. 70 (arguing that the District's motion to dismiss was filed late and should not be considered). While the motion to strike is denied (*see supra* § 3.1.2), the Court nonetheless gives full consideration to Thompson's substantive arguments against dismissal contained therein.

#### 3.4.1 Legal standard.

The Court will grant a motion to dismiss for failure to state a claim only if the complaint fails to allege "enough facts to state a claim to relief that is plausible

1    on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial

2    plausibility when the plaintiff pleads factual content that allows the court to draw

3    the reasonable inference that the defendant is liable for the misconduct alleged."

4    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is less than

5    probability, "but it asks for more than a sheer possibility" of wrongdoing. *Id.* When

6    considering a motion to dismiss, the Court accepts facts alleged in the complaint as

7    true and construes them in the light most favorable to the plaintiff. *Lund v. Cowan*,

8    5 F.4th 964, 968 (9th Cir. 2021). But courts "do not assume the truth of legal

9    conclusions merely because they are cast in the form of factual allegations." *Fayer v.

10   Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation omitted). Thus, "conclusory

11   allegations of law and unwarranted inferences are insufficient to defeat a motion to

12   dismiss." *Id.* (internal quotation marks omitted).

13        "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). Thus, a

14   "document filed pro se is to be liberally construed and a pro se complaint, however

15   inartfully pleaded, must be held to less stringent standards than formal pleadings

16   drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Courts are not to

17   "dismiss a pro se complaint without leave to amend unless it is absolutely clear that

18   the deficiencies of the complaint could not be cured by amendment." *Rosati v.

19   Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation modified).

20   ### 3.4.2    Thompson adequately pleads her Title VII and WLAD retaliation claims.

21
22        Thompson alleges that the District retaliated against her for filing an EEOC

23   charge by providing adverse employment references to prospective employers. The

1    District moves to dismiss this claim, arguing that Thompson no longer works for the

2    District and thus "does not have an employment relationship with the District

3    necessary to meet a critical element of the charge." Dkt. No. 65 at 5.

4        The District's argument borders on frivolous, as the Supreme Court

5    confirmed nearly twenty years ago that "former employees are included within

6    [Title VII's] coverage" when it comes to retaliation claims. *Robinson v. Shell Oil Co.*,

7    519 U.S. 337, 346 (1997). Thus, post-employment retaliation is actionable under

8    Title VII, and Washington courts interpret WLAD's anti-retaliation provision,

9    RCW 49.60.210, consistently with federal law, *Jin Zhu v. N. Cent. Educ. Serv. Dist.-*

10    *ESD 171*, 404 P.3d 504, 509–11 (Wash. 2017) (WLAD's prohibition against

11    retaliation is not limited to existing employment relationships).

12        The Court finds that Thompson's Title VII and WLAD claims easily pass

13    muster under Fed. R. Civ. P. 12(b)(6), as she alleges that she engaged in protected

14    activity (filing an EEOC charge), suffered adverse action (negative references

15    leading to job rejections), and that a causal connection exists between the two.

16        The District's motion to dismiss these claims is DENIED.

17    **3.4.3    Thompson adequately pleads her Equal Protection claim.**

18        Thompson's complaint asserts a Fourteenth Amendment Equal Protection

19    claim under Section 1983, alleging that, as an African American and Latina woman,

20    she "was treated less favorably than similarly situated white employees," including

21    "unauthorized negative references, leading to employment loss." Dkt. No. 46 at 17.

22    The District argues that Thompson fails to plead this claim because she does not

23

allege a custom, policy, pattern, or practice as required to establish municipal Section 1983 liability under *Monell*. Dkt. No. 65 at 6–7; *see Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978) (holding that a municipal defendant cannot be held liable under Section 1983 unless the plaintiff asserts injury from official municipal policy, practice, or custom).

The Court disagrees. Thompson alleges that the District—after subjecting her to a hostile, racially discriminatory workplace—gave negative references about her to multiple prospective employers on numerous occasions. *See* Dkt. No. 46 at 13–15 (listing employment application rejections). "While one or two incidents are insufficient to establish a custom or policy" under *Monell*, "[t]here is no case law indicating that a custom cannot be inferred from a *pattern of behavior toward a single individual*[.]" *Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017) (emphasis added) (finding jury-triable question of fact to support *Monell* claim alleging "a dozen instances" of mistreatment towards plaintiff). Here, the Court finds that Thompson has plausibly alleged a "pattern of behavior toward a single individual." *See id.* The Court rejects the District's argument to the contrary and DENIES the motion to dismiss this claim.

### 3.4.4    Thompson does not adequately plead her defamation claim.

Thompson asserts a defamation claim against the District, alleging that District "personnel made false and disparaging remarks about Plaintiff's qualifications to hiring authorities at multiple districts, harming Plaintiff's reputation and career." Dkt. No. 46 at 18. But she fails to identify what was

allegedly said—not even in general terms. "[E]ven under liberal federal pleading standards, 'general allegations of the defamatory statements' which do not identify the substance of what was said are insufficient." *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004) (quoting *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1314 (N.D. Cal. 1997)); *see also Harris v. City of Seattle*, 315 F. Supp. 1112, 1123–24 (2004) (dismissing defamation claim where plaintiff failed to "specify specific statements"); *Phillips v. World Pub. Co.*, 822 F. Supp. 2d 1114, 1118 (W.D. Wash. 2011) (same). Without knowing the content of the alleged statements, it is impossible for the Court to evaluate whether they could be defamatory, so Thompson's claim fails for this reason alone.

The Court notes that—assuming the facts in the complaint are true—this deficiency may not be Thompson's fault, as she was not privy to the allegedly defamatory calls. But unless or until she produces adequate factual allegations, perhaps after learning more through civil discovery, the operative complaint does not meet binding federal pleading standards in its current form. Count Five of the operative complaint is thus DISMISSED WITHOUT PREJUDICE.

### 3.4.5    Thompson adequately pleads her negligence claim.

Thompson alleges that the District "owed a duty to follow its own agreements and employment law" and "breached this duty by negligently managing and disseminating reference information about Plaintiff." Dkt. No. 46 at 19. The District argues that Thompson's negligence claim fails for two reasons: first, she fails to provide non-speculative evidence to support the element of causation; and second,

her negligence claim impermissibly "recast[s] her contract claim as a tort claim." Dkt. No. 65 at 8–9.

"In an action for negligence a plaintiff must prove four basic elements: (1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause." *Degel v. Majestic Mobile Manor, Inc.*, 129 Wash.2d 43, 48, 914 P.2d 728 (1996).

Thompson has adequately pled factual allegations supporting her claim that the District's adverse reference calls directly caused the denial and revocation of employment offers. Indeed, she attaches an email to her complaint in which the principal of Garfield High School, after offering her a position, states that "[a]fter reaching out for a reference check with your previous district. . . [w]e have decided not to move forward with your application for this role." Dkt. No. 46-15 at 1. This is enough to plausibly allege causation.

The District correctly notes that contractual duties alone cannot support a negligence claim under Washington's independent duty doctrine. *See Eastwood v. Horse Harbor Found., Inc.*, 241 P.3d 1256, 1262 (2010). But Thompson's pro se complaint, while inartfully pled, may encompass several recognized negligence theories that do not run afoul of this doctrine.

Thompson's factual allegations—that District employees provided unauthorized negative references in violation of established policies and agreements—could potentially support claims for negligent supervision of employees, negligent misrepresentation to third parties, or other established tort

theories. These theories, if properly developed, would not depend solely on contractual duties but on independent tort law principles.

Given Thompson's pro se status and the liberal construction given such pleadings, the Court declines to dismiss her negligence claim at this early stage. *See Erickson*, 551 U.S. at 94 ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But Thompson will need to clarify the specific duty and its source, as well as the particular theory of negligence she pursues, to survive later challenges. The current pleading, while sufficient under the forgiving 12(b)(6) standard, would likely prove inadequate at summary judgment without further development of the underlying tort theory and its elements.

For now, the District's motion to dismiss the negligence claim is DENIED.

### 3.4.6    Thompson inadequately pleads her outrage claim.

Thompson brings an intentional infliction of emotional distress (IIED) claim against the District, alleging that its "conduct—despite knowing of Plaintiff's EEOC protections—was extreme and outrageous, and caused lasting emotional trauma." Dkt. No. 46 at 19. The District argues these allegations cannot satisfy the high bar for outrage liability. The Court agrees.

"In Washington State, intentional infliction of emotional distress [or IIED] constitutes the same tort as outrage." *Maddox v. United Network for Organ Sharing*, No. 2:24-CV-00811, 2025 WL 943115, at *9 (W.D. Wash. Mar. 28, 2025)

1    (citing *Kloepfel v. Bokor*, 66 P.3d 630 (2003)). A claim for outrage or IIED requires

2    proof of three elements: "(1) extreme and outrageous conduct, (2) intentional or

3    reckless infliction of emotional distress, and (3) severe emotional distress on the

4    part of the plaintiff." *Reid v. Pierce Cnty.*, 961 P.2d 333, 337 (1998). Tortiously

5    outrageous conduct must be "so extreme in degree as to go beyond all possible

6    bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

7    civilized community." *Grimsby v. Samson*, 530 P.2d 291, 295 (1975). "Mere insults

8    and indignities… will not support imposition of liability on a claim of outrage."

9    *Dicomes v. State*, 782 P.2d 1002, 1013 (1989) (citing Restatement (Second) of Torts §

10   46, comment d (1965)).

11           While the elements of a claim for outrage are questions of fact, trial courts—

12   acting as "gatekeepers"—must "make an initial determination as to whether the

13   conduct may reasonably be regarded as so extreme and outrageous as to warrant a

14   factual determination by the jury." *Repin v. State*, 392 P.3d 1174, 1185 (Wash. Ct.

15   App. 2017).

16           Thompson's complaint fails to provide adequate factual specificity about the

17   District's allegedly outrageous conduct. She does not identify particular acts or

18   behaviors that would allow the Court to evaluate whether such conduct could meet

19   the stringent "extreme and outrageous" standard. Her allegations that the District's

20   conduct "was extreme and outrageous" constitute legal conclusions rather than

21   factual allegations and are insufficient under federal pleading standards. *See Iqbal*,

22   556 U.S. at 678 ("[courts] are not bound to accept as true a legal conclusion couched

23   as factual allegation"). Moreover, the conduct Thompson appears to reference—

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

providing negative employment references—does not, without more specifics, rise to the level of conduct that is "utterly intolerable in a civilized community." To be sure, such conduct may support other claims if proven, but the outrage standard requires conduct of an exceptional character.

The Court notes that—similar to the defamation claim—Thompson's ability to plead her outrage claim with sufficient specificity may be restricted by her limited access to information about the District's internal conduct. But at least for now, her allegations are insufficient to meet the demanding pleading requirements for an outrage claim. Count Seven of the operative complaint is thus DISMISSED WITHOUT PREJUDICE.

### 3.5 The parties' requests for sanctions and attorneys' fees are denied.

Both parties have asked the Court to order sanctions, attorneys' fees, and costs to punish their opposition for bad litigation behavior. *See, e.g.*, Dkt. Nos. 51, 53, 67, 70 (non-exhaustive list of such requests). Imposing sanctions and awarding fees and costs are matters of judicial discretion. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *Maag v. Wessler*, 993 F.2d 718, 719 (9th Cir. 1993).

The Court finds enough blame to go around. As for Thompson, even after the Court explained the requirements for Rule 26(c) discovery motions at Dkt. No. 56, she has continued to flood the docket with meritless requests for "emergency protective orders" that require considerable time and attention—yet do nothing to advance this litigation. While the Court recognizes that pro se civil-rights litigants

1    are entitled to liberal treatment, repetitively filing procedurally defective discovery

2    motions is never appropriate and eventually warrants sanctions.

3        And yet, the District is not without fault. In its motion to dismiss, the District

4    advanced the borderline-frivolous legal argument that former employees, including

5    those who quit for cause, lack standing to pursue Title VII retaliation claims

6    against former employers—a legal position lightyears out of step with well-

7    established law. *See supra* § 3.4.2. Defense counsel should know better.

8        Finding blame on both sides, the Court DENIES all pending requests for

9    sanctions, costs, and fees. But the Court warns Thompson that its patience has

10   worn thin. "There is strong precedent establishing the inherent power of federal

11   courts to regulate the activities of abusive litigants by imposing carefully tailored

12   restrictions under the appropriate circumstances." *De Long v. Hennessey*, 912 F.2d

13   1144, 1147 (9th Cir. 1990) (quoting *Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir.

14   1989)). If Thompson continues to seek discovery orders without following procedural

15   rules that *all* litigants must follow, the Court may implement restrictions on her

16   ability to file motions without advance judicial screening. *See* 28 U.S.C. § 1651; *De

17   Long*, 912 F.2d at 1148 (explaining procedural requirements for imposition of pre-

18   filing injunctions against pro se litigants).[3]

19

20

21   _____

22   [3] The Court refers Thompson to the Western District of Washington's online
     resources for pro se litigants, including its "Pro Se Guide to Filing Your Lawsuit in
23   Federal Court." *See* https://www.wawd.uscourts.gov/representing-yourself-pro-se.

## 4. CONCLUSION

This Omnibus Order resolves all pending motions.[4] The Court ORDERS as follows:

- The Court DENIES all pending requests for judicial notice and in camera review of evidence.

- The Court DENIES the request to coordinate this action with Thompson's other pending litigation in federal court.

- The Court DENIES all pending discovery motions, including Thompson's numerous motions for emergency protective orders.

- The Court DENIES Thompson's motion for entry of default.

- The Court DENIES all pending motions to strike.

- The Court DENIES all pending requests for sanctions, attorneys' fees, and costs. However, the Court warns Thompson that if she continues to seek discovery-related orders without following procedural rules, the Court may impose pre-filing restrictions or other sanctions.

- The District's motion to dismiss is GRANTED IN PART. Thompson's defamation claim (Count Five) and outrage claim (Count Seven) are DISMISSED WITHOUT PREJUDICE. The motion to dismiss is DENIED in all other respects.

---

[4] The Court notes that as it was preparing this Order, Thompson filed yet another motion. Dkt. No. 88. Thus, this Order in fact resolves all but one pending motion.

ORDER - 22

- The scheduling order at Dkt. No. 77 remains in effect. The parties will have a chance to raise any questions or issues with the Court at a status conference that has been scheduled for Tuesday, June 24, 2025, at 1:00 PM (PST).

- This Order resolves all pending motions. The Court DIRECTS the Clerk of Court to update the docket accordingly. The Court also DIRECTS the Clerk of Court that Thompson's filing at Dkt. No. 90 is a provision of "formal notice"—not a motion for relief—and thus should not be docketed as a pending motion. It is so ORDERED.

Dated this 23rd day of June, 2025.

Jamal N. Whitehead
United States District Judge

ORDER - 23